J-S31029-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: R.K.V., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: H.B.M., FATHER | : : : : : : : | |
| | : | No. 1425 EDA 2024 |

Appeal from the Decree Entered May 1, 2024
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  2023-A0165

BEFORE:  BOWES, J., McLAUGHLIN, J., and BECK, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED SEPTEMBER 24, 2024**

H.B.M. ("Father") appeals from the decree terminating his parental rights to R.K.V. ("Child"). Father argues the evidence was insufficient to establish grounds for termination because he was incarcerated during a portion of Child's dependency case and when he was in prison or allegedly recovering from an injury, he claims he demonstrated "the willingness and desire to be a parent." Father's Br. at 10. We affirm.

Child was born in December 2020. The Montgomery County Office of Children and Youth ("OCY") received a referral that Child's mother, J.L.V. ("Mother"), had been using drugs during her pregnancy. **See** Shelter Care Order, 1/7/22, at 2. Mother was then living in Collegeville, Montgomery County. Mother gave birth to another child a year later, in December 2021, and OCY received another referral regarding Mother's drug use and the newborn's suffering from withdrawal. **See** Order of Adjudication and

Disposition, 1/19/22, at 1. Mother tested positive for several controlled substances and admitted to using heroin. *Id.* Child and his younger sibling were placed in foster care shortly thereafter, in January 2022. *See* Shelter Care Order at 2.

Child has never resided with Father. At the time Child was removed from Mother's care, Father was incarcerated. *Id.*; N.T., 3/12/24, at 43-44. Father was released a few months after Child's removal, in April 2022, and began living in a homeless shelter in Philadelphia. *Id.* at 44-45. OCY began reunification services with Father in the fall of 2022. *Id.* at 45, 48, 89-93, 100-02. Father's goals for reunification with Child included regular visitation with Child, obtaining and maintaining employment or public assistance, obtaining and maintaining appropriate housing, and not acquiring new criminal charges. *Id.* at 42-43. Father was found to be moderately compliant at a permanency review hearing in January 2023 but had only attended one of five visits offered with Child. *See* Permanency Review Order, 1/3/23, at 1. Father was also found to be in moderate compliance in March 2023. *See* Permanency Review Order, 3/30/23, at 1.

Father's final visit with Child was in May 2023. N.T. at 128. Father was incarcerated again from June 2023 to October 2023. *Id.* at 58. Father was unable to have visits with Child and despite the urging of a caseworker, Father did not send cards or letters to Child. *Id.* at 129, 142-43. After his release, Father did not have stable housing or employment. *Id.* at 159-60. He did not

resume visitation with Child. *Id.* at 159-60; Permanency Review Order, 12/14/23, at 1.

On December 6, 2023, OCY filed a petition for the termination of Father's parental rights. The following month, Father met with an OCY caseworker. N.T. at 105. He stated he was living in a homeless shelter but had been employed for a couple of months. *Id.* at 104-05. Father told the caseworker that "moving forward, he'd like to have some kind of involvement in [Child]'s life." *Id.* at 105.

Following a bifurcated hearing in March and April 2024, the court found clear and convincing evidence supported termination of Father's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (8), and (b). The court explained in its Pa.R.A.P. 1925(a) opinion,

> [Father] failed to present *any* testimony, not even his own, to support [his] argument that [he] "had a lot of life issues that came up that prevented him from being a more engaged father" and that he should be given more time to "get his life together and get a home and get a job, and . . . develop a relationship with his child." Father had been incarcerated at least twice during [Child]'s short life, had failed to progress on the goals set for him in the OCY Family Service Plans or to take advantage of services offered to him by OCY. When he was not incarcerated, he lived in a homeless shelter in Philadelphia and confirmed that he wasn't in a position to have his child living with him. His only visits with [Child] were supervised, but, for a period of time, he did make some visits and acted appropriately. He didn't attend medical appointments, didn't celebrate birthdays or holidays with his child and didn't attend special events. During [Father]'s incarceration, despite OCY's encouragement, he didn't write any letters to [Child].
>
> On the other hand, OCY presented testimony of two caseworkers and two adoption caseworkers, all of whom had worked with the

- 3 -

family (including birth mother who voluntarily relinquished her parental rights to [Child] as well as another, older minor child of a different birth father) during the years in which these children were under OCY jurisdiction.

Trial Court Opinion, June 13, 2024, at 2-3 (emphasis in original; citations omitted). The court found termination "would best serve the interests of [Child], who ha[s] been in foster care since January 6, 2022, and was bonded to his foster parents, with whom both he and his sibling reside." *Id.* at 2 (citations omitted).

Father appealed. He presents the following issues:

1. The trial court erred in finding clear and convincing evidence to terminate Birth Father's parental rights under 23 Pa.C.S.A. § 2511(a)[(1)].

2. The trial court erred in finding clear and convincing evidence to terminate Birth Father's parental rights under 23 Pa.C.S. § 2511(a)[(2)].

3. The trial court erred in finding clear and convincing evidence to terminate Birth Father's parental rights under 23 Pa.C.S. § 2511(a)[(8)]

4. The trial court erred in finding clear and convincing evidence to terminate Birth Father's parental rights under 23 Pa.C.S. § 2511(b).

Father's Br. at 8.

Father argues that he was unable to care for Child due to his incarceration, and that when he was not incarcerated, he achieved moderate compliance at two permanency reviews in early 2023 and regularly visited Child. He argues that OCY filed the petition for termination a mere two months after his second release from prison in October 2023, which did not give him

enough time to comply with the reunification plan. He contends the evidence is insufficient to prove his unwillingness or incapacity to provide parental care and did not establish that he had relinquished his parental claim, refused or failed to perform parental duties, or cannot or will not remedy the conditions that led to Child's removal.

Father also asserts that because there were no allegations of serious abuse or neglect, and he has shown during his times of release that he can be a loving, caring, and devoted parent, termination would not serve Child's best interests. He asserts, "As dedicated and heroic as foster parents are, there is simply no substitute in the foster system for the care and love of a biological parent." *Id.* at 18. He contends that he should be given a "fair opportunity to parent his child before the court makes a final determination that his rights should be terminated." *Id.* at 19. OCY filed a brief arguing for affirmance, and Child's guardian *ad litem* joined OCY's brief.

When reviewing the involuntary termination of parental rights, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re T.S.M*., 71 A.3d 251, 267 (Pa. 2013) (quoting *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012)). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." *In re Adoption of K.C.*, 199 A.3d 470, 473 (Pa.Super. 2018). We will not find an abuse of discretion without a "demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *In re Adoption of S.P.*, 47 A.3d at 826.

Termination of parental rights is controlled by Section 2511 of the Adoption Act. *See* 23 Pa.C.S.A. § 2511. The party seeking termination must first prove "that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). If the court finds grounds for termination under Section 2511(a), the court turns its focus to the "determination of the needs and welfare of the child under the standard of best interests of the child," as required by Section 2511(b). *Id.*

"A party seeking termination of parental rights bears the burden of establishing grounds for termination by clear and convincing evidence." *In re Adoption of K.C.*, 199 A.3d at 473 (cleaned up). "Clear and convincing evidence is evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Id.* (cleaned up).

We affirm. Although the court found grounds for termination under multiple subsections of Section 2511(a), we need only agree with the court's decision as to any one subsection to affirm. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). OCY presented clear and convincing evidence of grounds for termination under Section 2511(a)(1). This subsection provides for termination of parental rights where, "[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim

to a child or has refused or failed to perform parental duties." 23 Pa.C.S.A. § 2511(a)(1).

Although the six months preceding the filing of the petition is the most critical period under subsection 2511(a)(1), the court must "examine the individual circumstances of each case[.]" *In re Z.P.*, 994 A.2d 1108, 1117 (Pa.Super. 2010) (citation omitted); *see also In re Adoption of L.A.K.*, 265 A.3d 580, 592 (Pa. 2021). If there is evidence meeting subsection (a)(1), the court must consider: (1) the parent's explanation for the abandonment, (2) the parent's post-abandonment contact with the child or his efforts to re-establish contact, and (3) the effect termination will have on the child under Section 2511(b). *In re Adoption of C.M.*, 255 A.3d 343, 365 (Pa. 2021). However, the court cannot consider any efforts the parent made after the filing of the petition. 23 Pa.C.S.A. § 2511(b).

Regarding the "parental duties" required by the statute, we have previously explained,

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his . . . ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

*In re Z.P.*, 994 A.2d at 1118-19 (cleaned up).

A parent's absence and/or failure to support due to incarceration, alone, does not warrant termination under subsection 2511(a)(1). *See In re Adoption of S.P.*, 47 A.3d at 822, 828. Furthermore, a court must not terminate parental rights based solely on inadequate housing or income, if found to be beyond the control of the parent. 23 Pa.C.S.A. § 2511(b). Nevertheless, contrary to Father's argument, "a parent's responsibilities are not tolled during incarceration," and "an incarcerated parent is expected to utilize all available resources to foster a continuing close relationship with his [child]." *In re Z.P.*, 994 A.2d at 1120.

[T]o be legally significant, the [post-abandonment] contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role. The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question. . . .

> Although a parent is not required to perform the impossible, he must act affirmatively to maintain his relationship with his child, even in difficult circumstances. A parent has the duty to exert himself, to take and maintain a place of importance in the child's life.

*Id.* at 1119-20 (cleaned up). "[T]he focus under [s]ubsection 2511(a)(1) is not the degree of success a parent may have had in reaching the child, but . . . whether, under the circumstances, the parent has utilized all available resources to preserve the parent-child relationship." *In re Adoption of C.M.*, 255 A.3d at 365. Where a parent fails to utilize resources while in prison to continue a close relationship with the child, termination is warranted under subsection 2511(a)(1). *See In re Adoption of A.C.*, 162 A.3d 1123, 1130 (Pa.Super. 2017) (citing *In re Adoption of McCray*, 331 A.2d 652, 655 (Pa. 1975)).

Here, the evidence established that Father visited Child in May 2023, but had no contact with Child from June through December 2023, when OCY filed the petition. This constituted a failure or refusal to perform parental duties exceeding the six-month period immediately preceding the filing of the petition. And, although Father was incarcerated during five of those months – June through October 2023 – Father has not explained why he did not attempt to contact Child from prison. Nor did he explain his failure to make any attempt to visit Child following his release in October. Father has not "demonstrate[d] a serious intent . . . to [cultivate] a parent-child relationship" or "a willingness and capacity to undertake the parental role." *In re Z.P.*, 994 A.2d at 1119.

Thus, the record supports the trial court's conclusion that clear and convincing evidence supports termination under subsection (a)(1).

We therefore turn to the court's findings regarding Child's needs and welfare under Section 2511(b). This provision requires courts considering termination to "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The court must analyze "intangibles such as love, comfort, security, and stability." ***Int. of K.T.***, 296 A.3d 1085, 1106 (Pa. 2023) (citation omitted). The court must consider "the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond," and "whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." ***In re L.M.***, 923 A.2d at 511; ***In re T.S.M.***, 71 A.3d 251, 268 (Pa. 2013).

Thus, contrary to Father's argument that a foster parent is "no substitute" for a biological parent, the law recognizes that the best interests of a child are sometimes served by substituting foster parents' care for that of a biological parent. Here, Father has never provided parental care for Child and has not visited or contacted Child since May 2023, when Child was two years old, which was more than a year before the termination hearing. In contrast, as the trial court observed, OCY presented multiple witnesses who testified about the care the foster parents have been providing Child and the parental bond the foster parents share with Child. ***See also*** N.T. at 81, 106, 110-11, 145-46, 161. Notably, the foster parents are willing to adopt Child.

*Id.* at 110, 146. We therefore find the record supports the court's conclusion that termination of Father's parental rights will best serve Child's needs and welfare.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/24/2024